IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

CAROLYN JOHNSON,

    Plaintiff,

v.                                               No. 07-2227 B

INTERSTATE BRANDS CORPORATION,

    Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, OR IN
THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT
_____

The Plaintiff, Carolyn Johnson, filed this action against the Defendant, Interstate Brands Corporation ("IBC"), alleging that IBC discriminated against her on the basis of age, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; and the Tennessee Human Rights Act ("THRA"), codified at Tennessee Code Annotated § 4-21-101 et seq. Before the Court is the Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative for summary judgment pursuant to Rule 56. For the reasons stated below, the Defendant's motion is DENIED.

BACKGROUND

The following facts are undisputed, unless noted. On March 16, 2006, Johnson filed a Charge Information Form with the Equal Employment Opportunity Commission ("EEOC"), alleging that IBC had discriminated against her on the basis of her age. (Doc. No. 13 Ex. A.) The Plaintiff claims she was discharged by IBC on March 24, 2006. (Id. Ex. B.) By the time she was terminated by IBC, Johnson had instituted a Chapter 13 bankruptcy proceeding in the

United States Bankruptcy Court for the Western District of Tennessee. (Doc. No. 13, Def.'s Statement of Facts ¶ 3.) On April 24, 2006, the Plaintiff executed a Charge of Discrimination against IBC and filed the instant complaint against the Defendant in the Chancery Court of Tennessee on February 12, 2007. (Id. ¶¶ 4, 8.) This suit was later removed to federal court by IBC. (Doc. No. 1.)

On March 16, 2007, the Bankruptcy Court dismissed the Plaintiff's bankruptcy petition. (Id. ¶ 11.) At the time her petition was dismissed, Johnson had not informed the court of her pending claim against IBC. (Id. ¶ 10.) On April 16, 2007, the Plaintiff filed a second bankruptcy petition in the United States Bankruptcy Court for the Western District of Tennessee. (Id. ¶ 12.) She did not disclose her employment discrimination lawsuit in the Statement of Financial Affairs she attached to her bankruptcy petition. (Doc. No. 13 Ex. C-2 at 2.) The Plaintiff's Chapter 13 bankruptcy plan was confirmed by the bankruptcy court on July 4, 2007. (Doc. No. 13, Def.'s Statement of Facts, ¶ 20.)

On July 6, 2007, IBC filed the instant motion to dismiss, arguing that Johnson's claims were barred by the doctrine of judicial estoppel because she failed to disclose them to the bankruptcy court. (Doc. No. 13, Def.'s Mem in Supp. Mot. to Dismiss, at 4.) Johnson did, however, disclose the suit to her creditors and the bankruptcy trustee and has recently taken steps to amend her schedule of assets to include this pending suit. (Doc. No. 20, Pl.'s Statement of Facts, ¶¶ 2, 4.) The Plaintiff claims that judicial estoppel is not appropriate because her original non-disclosure was not done in bad faith and her conduct does not give her an unfair advantage. (Doc. No. 20, Pl.'s Mem. in Opp. Def.'s Mot. to Dismiss, at 3.)

The Defendant also argues that Johnson's suit should be dismissed because once

2

someone files for bankruptcy pursuant to Chapter 13, all causes of action previously owned by that person then belong to the bankruptcy estate. (Doc. No. 13, Def.'s Mem in Supp. Mot. to Dismiss, at 7.) The Plaintiff asserts that this argument is without merit, because she has begun the process of having the proper paperwork approved to allow her to proceed against the Defendant. (Doc. No. 20, Pl.'s Mem. in Opp. Def.'s Mot. to Dismiss, at 4.)

## STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). A Rule 12(b)(6) motion shall be converted into a motion for summary judgment when materials outside the pleading are presented to and accepted by the court. See Fed. R. Civ. P. 12(b) ("If, *on a motion asserting the defense numbered (6)* to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56 . . . .") (emphasis added). In this case, both parties have attached exhibits to their pleadings. Because the Court will consider these materials, it shall treat IBC's motion as one under Federal Rule of Civil Procedure 56.

Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm

3

Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

A. JUDICIAL ESTOPPEL

The Defendant argues that Johnson's claim is barred by the doctrine of judicial estoppel because she failed to disclose it to the bankruptcy court before her plan was confirmed. Under the equitable doctrine of judicial estoppel, "'[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . .'" New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)); see also Eubanks v.

4

CBSK Fin. Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749-50 (internal citations and quotation marks omitted). Parties should be prevented from abusing the process through "cynical gamesmanship," and "playing fast and loose with the courts." Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002) (citations omitted). However, the Sixth Circuit has instructed that the doctrine "should be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.'" Eubanks, 385 F.3d at 897 (quoting Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)).

The Supreme Court has identified several factors that should inform a court's decision to apply the doctrine of judicial estoppel. First, the court should consider whether the party's later position is clearly inconsistent with its earlier position, and, second, "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." New Hampshire, 532 U.S. at 750 (internal quotation marks and citation omitted). Third, the court should inquire "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751 (citations omitted). These three factors, however, do not establish "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id.

The confirmation of a bankruptcy plan constitutes a final judgment in bankruptcy proceedings. Browning, 283 F.3d at 772 (citations omitted). Res judicata principles bar the relitigation of any issues that were raised or that could have been raised before the bankruptcy court. Id. Pursuant to the bankruptcy code, debtors are obligated to file a schedule disclosing

5

their assets and liabilities, as well as a statement of their financial affairs. 11 U.S.C. § 521(a)(1). The purpose of the disclosure filings "is to permit the court, the trustee, and the creditors to evaluate the debtor['s] financial condition at the date of bankruptcy and ascertain what assets may be available for distribution to creditors." In re Superior Crewboats, Inc., 374 F.3d 330, 333 (5th Cir. 2004). "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend [her] financial statements if circumstances change. Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) (internal citations and quotation marks omitted). A cause of action is an asset that must be disclosed to the bankruptcy court. Bohanan v. Bridgestone/Firestone N. Am. Tire, LLC, No. 3:06-cv-122, 2007 WL 1091209, at * 3 (M.D. Tenn. April 10, 2007) (citing Eubanks, 385 F.3d at 897; Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001)). Even potential causes of action must be disclosed. Id. at * 3 (citation omitted).

When the debtor's failure to disclose a claim is inadvertent or the result of a mistake by the debtor, the claim will not be estopped . Browning, 283 F.3d at 776. Inadvertence may be found (1) "where the debtor lacks knowledge of the factual basis of the undisclosed claims" and (2) "where the debtor has no motive for concealment." Id. A motive to conceal can be inferred from the omission itself, because "[b]y omitting the claims, [the debtor] could keep any proceeds for herself and not have them become part of the bankruptcy estate." Barger v. City of Cartersville, 348 F.3d 1289, 1296 (11th Cir. 2003); see also Walker v. Delta Air Lines, Inc., No. Civ.A. 100CV0558-TWT, 2002 WL 32136202, at *4 (N.D. Ga. Aug. 1, 2002) ("[T]he desire to have a bankruptcy discharged is a motive for concealing a claim since having a potential lawsuit as an asset could dictate the outcome of a bankruptcy proceeding.") (citation omitted).

Because the Plaintiff instituted the instant suit approximately two months before she filed her second bankruptcy petition, she cannot dispute that she had knowledge of the factual basis of the claim. Furthermore, Johnson did not attempt to amend her bankruptcy schedule until *after* the plan was confirmed by the court and the Defendant filed the instant motion to dismiss. (Doc. No. 20, Pl.'s Mem. in Opp. Def.'s Mot. to Dismiss, at 1.) Thus, the Plaintiff's attempt to amend her bankruptcy schedule seems predominately motivated by a desire to prevent her discrimination suit from being dismissed. Nonetheless, the Court finds that it would inappropriate to dismiss this case in light of the fact that Johnson informed her creditors and the bankruptcy trustee of her claim against the Defendant at the meeting of creditors, which took place at least a month before her bankruptcy plan was confirmed. (Doc. No. 20 Ex. 3, May 22, 2007 Letter from the Plaintiff's Bankruptcy Attorney to the Attorney Representing Her in the Instant Suit.) This Circuit has found that a trustee's knowledge of a debtor's pending claim is an important factor that may preclude the application of the doctrine of judicial estoppel to that claim. Eubanks, 385 F.3d at 899.

In Eubanks, the Sixth Circuit reversed a district court determination that the plaintiffs' claims were barred by judicial estoppel despite their omission from the plaintiffs' bankruptcy schedules. In reaching this determination, the court noted that

> . . . Plaintiffs made the court, and the Trustee, aware of the potential civil claim against Defendant before the bankruptcy action closed, although the claim was omitted from Plaintiffs' bankruptcy schedule form. Plaintiffs' counsel and the Trustee were in contact, with respect to the documentation regarding the claim against Defendant, prior to the filing of the Trustee's Final Report. When Plaintiffs' counsel could not confirm whether or not the Trustee intended to reconcile the civil claim through the bankruptcy proceeding, Plaintiffs attempted to resolve the issue through a court conference, which was eventually cancelled due to the filing of the Trustee's Final Report.

Eubanks, 385 F.3d at 898. Based on these "constant affirmative actions" by the plaintiffs to

7

inform the bankruptcy trustee and court of their claim, the Sixth Circuit concluded that the omission was merely inadvertent. Id. at 899 and n.2.

In this case, the Plaintiff's attempts to inform the trustee and the bankruptcy court of her claim against IBC were less "constant" than those of the plaintiffs in Eubanks. Johnson's own evidence reveals only one attempt in the three-month period from the filing of her second bankruptcy petition to the confirmation of the plan. Thus, this is a closer case than Eubanks. Nonetheless, the Plaintiff's efforts to apprise the trustee of her suit are inconsistent with an intent to deceive the bankruptcy court and thus provide sufficient support for her contention that her failure to include the suit in her bankruptcy schedules was unintentional. Therefore, the Defendant's motion to dismiss the Plaintiff's claim on the basis of judicial estoppel is DENIED.

B.      STANDING

The Defendant also argues that Johnson's suit must be dismissed because her present cause of action now belongs to the bankruptcy estate. The Sixth Circuit held in a case involving a Chapter 7 filing that such debtors do not have standing to bring claims that are part of the bankruptcy estate. Bauer v. Commerce Union Bank, 859 F.2d 438, 440-42 (6th Cir. 1988). Other circuits have differentiated between Chapter 7 and Chapter 13 debtors, holding that the latter *do* have the right to sue in their own name because such debtors still retain possession of the estate. See Cable v. Ivy Tech State College, 200 F.3d 467, 472-74 (7th Cir. 1999) (holding that the Chapter 13 debtor and the trustee have concurrent standing to bring a claim on behalf of the bankruptcy estate because it would be illogical "to grant the debtor possession of the chose in action yet prohibit him from pursuing it . . . ."); Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 515-16 (2d Cir. 1998) (per curium) (finding that a Chapter 13 debtor has standing "to litigate causes of action that are not part of a case under title 11" in part because "in Chapter 13

proceedings (unlike Chapter 7 proceedings) the creditors' recovery is drawn from the debtor's earnings, not from the assets of the bankruptcy estate"); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1209 n.2 (3d Cir. 1992) ("Chapter 13 debtors are empowered to maintain suit even after a bankruptcy trustee has been appointed in their case: an essential feature of a chapter 13 case is that the debtor retains possession of and may use all the property of his estate, including his prepetition causes of action, pending confirmation of his plan.").

This Court previously had the opportunity to visit the issue and concluded that a debtor in a Chapter 13 bankruptcy action may proceed as the sole Plaintiff on behalf of the bankruptcy estate. See Robert Gervis, Jr. v. Sears, Roebuck & Co., No. 2:01-cv-2934, June 18, 2004 Order Denying Defendant's Motion to Dismiss, at 2-8 (citing Olick, 145 F.3d at 515-16; Maritime, 959 F.2d at 1209 n.2; Stansberry v. Uhlich Children's Home, 264 F. Supp. 2d 681, 686-87 (N.D. Ill. 2003); Beasley v. Pers. Fin. Corp., 279 B.R. 523, 527-28 (Bankr. S.D. Miss. 2002)). The determination was based upon the finding of other courts, which distinguished between Chapter 7 and 13 filings, that in a Chapter 13 case, "'the debtor has the right to use the property - the cause of action that came into the bankruptcy estate.'" (Id. at 7 (quoting In re York, 291 B.R. 806, 814-15 (Bankr. E.D. Tenn. 2003)); see also In re Wirmel, 134 B.R. 258 (Bankr. S.D. Ohio 1991).[1]

---

[1] Another judge of this district has taken a different position than the one espoused in this opinion. In Scott v. Dress Barn, District Judge James D. Todd held that a Chapter 13 debtor lacked standing to pursue an employment discrimination claim, when she filed a bankruptcy petition less than a month after filing the claim. No. 04-1298-T-AN, 2006 WL 962534, at *2 (W.D. Tenn. Apr. 12. 2006) (Todd, J.). The court found that the debtor would only have standing if the bankruptcy trustee abandoned the claim or the bankruptcy court ordered the claim abandoned. Id. at *3. In so holding, the court relied on Bauer and did not consider whether Chapter 7 and Chapter 13 debtors should be treated differently. See id. at *2-3. By contrast, in Paris v. Sansom, a district court in the Eastern District of Tennessee reached the opposite conclusion, holding that a Chapter 13 debtor had standing to bring a claim. No. 1:06-cv-98, 2007 WL 1345368, at *4-5 (E.D. Tenn. May 7, 2007) (Collier, J.). A district court in the

Although the Sixth Circuit has yet to rule on this issue, the Court applies the well-reasoned holdings of the Seventh, Second, and Third Circuits and determines that, as a Chapter 13 debtor, the Plaintiff in this case has standing to bring her suit against IBC.[2] Thus, the Defendant's motion to dismiss the Plaintiff's claim on the basis that she lacks standing is DENIED.

## CONCLUSION

Based on the foregoing, the Defendant's motion to dismiss, which the Court has converted to a motion for summary judgment, is DENIED.

**IT IS SO ORDERED** this 14th day of January, 2008.

                s/ J. DANIEL BREEN
                UNITED STATES DISTRICT JUDGE

---

Southern District of Ohio held the same. Smith v. ABN AMBRO Mortgage Group, No. 1:06-cv-45, 2007 WL 950334, at * 6 (S.D. Ohio Mar. 27, 2007) (Barrett, J.). Both courts noted the distinction that other courts have made between Chapter 7 and Chapter 13 debtors. Id.; Paris, WL 1345368, at *4-5.

[2] In reaching this conclusion, the Court does not need to resolve the split in authority on the issue of whether the debtor has exclusive standing to bring claims that belong to the bankruptcy estate or whether the debtor and the trustee have concurrent standing. See In Re Jackson, 317 B.R. 573, 579 (Bankr. D. Mass. 2004) (noting that courts have reached different conclusions on the issue of whether a Chapter 13 debtor and trustee have concurrent standing over a claim or whether the debtor has exclusive standing and holding that it is the debtor alone who has the authority to pursue a cause of action that is the property of the estate).